Michael L. Haman
Haman Law Office
923 N. 3rd Street
P.O. Box 2155
Coeur d'Alene, ID 83816-2155
Telephone: (208) 667-6287
Facsimile: (208) 676-1683
ISB # 4784
mlhaman.law@gmail.com

Attorneys for Defendant Allstate Insurance Company

IN THE DISTRICT COURT FOR THE STATE OF IDAHO

| | |
|---|---|
| NANCEE GERBER-SIGGELOW, individually, and MICHAEL WOLFE, individually, | |
| Plaintiffs, | State Case No. CV01-18-14927 |
| vs. | Federal Case No. _____. |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, a foreign corporation, | NOTICE OF REMOVAL |
| Defendant. | |

COMES NOW, the Defendant, by and through its counsel of record, and pursuant to 28 U.S.C. § 1441 hereby files this Notice of Removal of this action to the Untied States District Court for the District of Idaho, and sets forth the following grounds for removal:

1.     This suit is a civil action filed in the Fourth Judicial District of the State of Idaho, in and for the County of Ada, on August 13, 2018, entitled *"Gerber-Siggelow, et al., v. Allstate Insurance,"* cause number CV-01-18-14927.  A conformed copy of the Summons and Complaint in

this action are attached hereto as Exhibit "A," and constitutes the process (Summons and Complaint) served upon said Defendant in this action. Also, attached as Exhibit "B" is a copy of Defendant's Notice of Appearance in this matter filed on August 31, 2018.

2.     The aforementioned action was commenced by the filing of the aforementioned Complaint in the Fourth Judicial District of the State of Idaho, in and for the County of Ada, sent by certified mail to the Registered Agent for said Defendant with a postmark date of August 16, 2018, and a receipt date of August 20, 2018. See Exhibit "C" which contains the Service of Process Transmittal evidencing the date upon which Defendant's Registered Agent received service via certified mail on August 20, 2018. Thereafter, counsel for said Defendant received the Summons and Complaint, and filed the aforementioned Notice of Appearance in State Court on August 31, 2018.

3.     The above described action is one by which this Court has original jurisdiction under the provisions of Title 28 U.S.C. § 1332 and is therefore removable to this Court pursuant to the provisions of Title 28 U.S.C. § 1441(a) and (b), in that it is a civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between: (1) citizens of different States ... ." See 28 U.S.C. § 1332. There is no dispute that the amount in controversy will exceed $75,000.00 and that the parties are "citizens of different States."

4.     Pursuant to 28 U.S.C § 1446(b) as well as (c), this Notice of Removal is being filed within the time prescribed therein. Also, pursuant to 28 U.S.C § 1446(d), all parties are being provided with written notice of filing of this Notice of Removal, as is the State Court.

In sum, the Defendant hereby removes this action, now pending in the Fourth Judicial District of the State of Idaho, in and for the County of Ada, to this Court pursuant to 28 U.S.C §§ 1332, 1441 and 1446.

Dated this ___19___ day of September, 2018.

HAMAN LAW OFFICE

By_____
Michael L. Haman
Attorneys for Defendant Allstate Insurance
Mlhaman.law@gmail.com

CERTIFICATE OF SERVING

I HEREBY CERTIFY that on this ___19___ day of September, 2018, I served a true and correct copy of the foregoing NOTICE OF REMOVAL by the method described below to:

| | |
|---|---|
| John Bush | _____ U.S. First class mail |
| Law Offices of Comstock & Bush | ___✓___ Fax/email |
| 199 N. Capitol Blvd., Ste. 500 | _____ Hand Delivery |
| PO Box 2774 | |
| Boise, Idaho 83701 | |
| Fax: 208 344-7721 | |
| email: jabush@comstockbush.com | |

| | |
|---|---|
| Clerk of District Court, Ada County | _____ U.S. First class mail |
| 4th Judicial District | ___✓___ Fax/email |
| 200 W. Front Street | _____ Hand Delivery |
| Boise, ID 83702 | |
| Court Fax: (208) 287-6919 | |

_____
Michael L. Haman
Mlhaman.law@gmail.com

NOTICE OF REMOVAL - 3

Electronically Filed
8/13/2018 5:08 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Santiago Barrios, Deputy Clerk

John A. Bush, ISB #3955
LAW OFFICES OF COMSTOCK & BUSH
199 N. Capitol Boulevard, Suite 500
P.O. Box 2774
Boise, Idaho 83701
Telephone: (208)344-7700
Facsimile: (208) 344-7721
jabush@comstockbush.com

Attorneys for Plaintiff

Bail, Deborah A.

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF

## THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| NANCEE GERBER-SIGGELOW, individually, and MICHAEL WOLFE individually, | CV01-18-14927 Case No. _____ |
| Plaintiffs, | SUMMONS – ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY |
| vs. | |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, a foreign corporation, | |
| Defendant. | |

**DEFENDANT'S EXHIBIT**

tabbies A

NOTICE: YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFFS. THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 21 DAYS. READ THE INFORMATION BELOW.

TO: ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

YOU ARE HEREBY NOTIFIED That in order to defend this lawsuit, an appropriate written response must be filed with the above designated Court within twenty-one (21) days after service of this Summons on you. If you fail to so respond the Court may enter judgment against you as demanded by the Plaintiffs in the Complaint.

A copy of the Complaint is served with this Summons. If you wish to seek the advice or representation by an attorney in this matter, you should do so promptly so that

SUMMONS – ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY - 1

your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10 and other Idaho Rules of Civil Procedure and shall also include:

1.     The title and number of the case.

2.     If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3.     Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4.     Proof of mailing or delivery of a copy of your response to Plaintiff's attorney as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named Court. Ada County Courthouse, 200 W. Front Street, Boise, Idaho, 83702. Telephone: (208) 287-6900.

DATED ___8/13/2018 5:06 PM___.

CLERK OF THE DISTRICT COURT

CHRISTOPHER D. RICH

_____
Deputy Clerk

John A. Bush, ISB #3955
LAW OFFICES OF COMSTOCK & BUSH
199 N. Capitol Boulevard, Suite 500
P.O. Box 2774
Boise, Idaho 83701
Telephone: (208)344-7700
Facsimile: (208) 344-7721
jabush@comstockbush.com

Attorneys for Plaintiff

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF

## THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| NANCEE GERBER-SIGGELOW, individually, and MICHAEL WOLFE individually, <br><br> Plaintiffs, <br><br> vs. <br><br> ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, a foreign corporation, <br><br> Defendant. | Case No. CV01-18-14927 <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> Fee Category A: $221.00 |

COME NOW, the Plaintiffs, Nancee Gerber-Siggelow and Michael Wolfe by and through their attorneys of record, Comstock & Bush, and as and for a cause of action against the above named Defendant, complain and allege as follows:

I.

### JURISDICTION \ GENERAL ALLEGATIONS

1.     At all times relevant herein, Plaintiffs Nancee Gerber-Siggelow and Michael Wolfe maintained their primary residence at 5186 N. Lakemont Lane in Garden

City, Idaho which is located in Ada County, Idaho.

2.  At all times relevant herein, Defendant Allstate Property and Casualty Insurance Company ("Allstate"), was a foreign insurance company authorized to do business within the state of Idaho. Plaintiffs believe Defendant Allstate's principal place of business is in Northbrook, Illinois.

3.  The Plaintiffs insured their home in Garden City with Defendant Allstate. Plaintiffs paid all applicable premiums and were issued Allstate Your Choice Home Platinum Protection insurance policy, policy number 976 186 844. The policy was in effect from May 19, 2016 to May 18, 2017. Plaintiffs' home was a high end estate residence with a value well in excess of one million dollars. Plaintiffs had invested substantial time and money in the home in furnishings, finishes, and overall décor. The homeowner's insurance policy, and annual premium which they paid, was commensurate with the quality of the home.

4.  On January 9, 2017, a section of the Plaintiffs' ceiling in their dining room collapsed secondary to a failure of the roof caused by snow accumulation and formation of ice dams. Significant water and debris flooded into the room. Plaintiffs made immediate contact with their insurance agent who reported the claim to Allstate. Allstate opened a claim and assigned a claim number, 0442033676. An adjuster appeared at Plaintiffs' home within a few days and, after a brief inspection, incorrectly advised that the claim was not likely covered as the policy excluded "ice dams." The adjuster advised he would speak with his supervisor and get back to them.

5.  Plaintiffs thereafter contacted a disaster/restoration contractor and a roofing contractor. Plaintiffs were contacted by Allstate again who advised that a

second adjuster had been assigned and another inspection appointment was scheduled for January 25, 2017. Plaintiffs were advised to take no steps to correct or fix the problems with the roof or to address the damage to the interior of the home until Allstate could inspect the damage.

6.    Just prior to the meeting on January 25th, Allstate rescheduled the appointment to January 29th. More than two weeks had elapsed since the initial event on January 9th and additional water damage was occurring daily as winter storms continued to pass through the Boise, Idaho area. On January 29th, Allstate's adjuster did a more detailed inspection of the home but did not get on the roof. He agreed that the snow needed to be removed from the roof. However, Plaintiffs were advised that Allstate would not approve nor authorize any repairs pending inspection. Although the initial intrusion of water appeared to be relatively limited in scope, Allstate's delay in inspecting and approving remediation measures allowed for multiple subsequent flood events which ultimately affected almost every room, hallway, and entry in the home.

7.    In early February, Plaintiffs' roofing contractor removed the snow from the roof and placed tarps in an attempt to keep water and moisture from intruding into the home. By February 16th, Plaintiffs' roofing contractor, who had inspected the roof, presented his cause of loss and estimate of repairs to Allstate. He spoke with the adjuster and explained the nature of the problem, how the ice dams formed and what caused the loss.

8.    Rather than address the insureds' roofing repair estimate, Allstate changed adjusters (for the third time) and Plaintiffs were notified on or about February 27th that a new adjuster and a second inspection would occur on February 28th. On that

date, the adjuster again refused to get on the roof to inspect the damage. Unbeknownst to the Plaintiffs, Allstate's adjuster(s) did complete an estimate following the February inspection which included full replacement of the roof consistent with the report/estimate of the roofing contractor submitted to Allstate weeks prior. However, Allstate did not authorize repairs. Rather, Allstate decided to hire a structural engineer to inspect and investigate the condition of the roof and determine if it was damaged by the snow/ice dams. Allstate also asked its engineer to opine on whether the roof could be repaired, rather than replaced, and to assess whether there were causes of damage that could be attributed to something other than the snow/ice dams.

9.     Allstate did not contract with the structural engineer until March 6, 2017, almost two months after the initial loss had occurred. The engineer inspected the home on March 7th and ultimately concluded that the home was damaged as a result of the snow/ice dams and that the roof needed to be replaced.

10.     Plaintiffs did not hear from Allstate until March 30th, more than three weeks after the engineer's inspection. They were notified that Allstate had changed adjusters again (4th time) and the file had been reassigned to the adjuster who inspected the home in January. Plaintiffs were advised by this adjuster that he had scheduled a meeting with the roofing contractor, at which time he would do a detailed inspection of the interior and exterior of the home.

11.     Following that inspection, Allstate requested that the roofing contractor revise portions of his initial estimate which had been submitted almost two months prior. The roofing contractor promptly responded to the request for additional information and the adjuster then advised the Plaintiffs that he was discussing the revised estimate with

his manager to finalize the roofing portion of the claim.

12. Allstate did not finalize the roofing portion of the claim at that time. Rather, Plaintiffs were next advised that Allstate did not believe it was necessary to replace the roof, as recommended by the roofing contractor. Rather, they wanted to repair portions of the roof. Plaintiffs were advised that Allstate was sending its structural engineer back to the home. That did not occur until April 18, 2017. By this point, more than three months had elapsed since the initial occurrence and Allstate had yet to determine how, or if, it was going to fix the roof.

13. On May 7th, almost 4 months to the day after the initial occurrence, Allstate finally advised the Plaintiffs that it was authorizing replacement of the roof. Allstate essentially accepted the repair estimate and cause of loss as submitted by Plaintiffs' roofing contractor in February of 2017. The roof was completed in May of 2017. Allstate paid for the roofing project and the removal of snow from the roof. Allstate refused and has not paid the contractors invoice for tarping the roof prior to repair.

14. Following the roof replacement, Allstate finally turned to the portion of the claim that addressed the damage to the home caused by the initial (and subsequent) intrusion of water. Allstate deferred adjustment of the damages and restoration while it investigated the cause of the loss and determined whether it would authorize repair or replacement of the roof. In June, Allstate advised the Plaintiffs that it was changing adjusters again (5th time).

15. Given Allstate's constant change of adjusters and delay, Plaintiffs retained its own adjusting firm to assist in assessing the damage caused to the home and the

cost of restoration. Allstate was notified that Plaintiffs had retained their own adjuster in June of 2017.

16.     Plaintiffs' Allstate policy had several extended coverages including Additional Living Expense, or ALE, coverage. ALE coverage applied, for example, where an insured was required to vacate their home while it was being repaired or restored following a covered loss. In June of 2017, Plaintiffs' adjuster began working with the restoration contractor to finalize an estimate of repairs. In addition, Plaintiffs' adjuster learned that Allstate had changed adjusters yet again (6th time) and the claim had been transferred to a contract adjusting firm in Alabama.

17.     In July of 2017, Allstate forwarded the estimate it was using to evaluate the interior claim to Plaintiffs' public adjuster. Pertinently, that estimate was completed on March 7, 2017 and was prepared by the adjuster who initially visited the home in January and was then reassigned in March. It had never been shared with or provided to the Plaintiffs prior to July. As to the ALE claim, Allstate delayed approval putting up multiple hurdles for the Plaintiffs to jump over before they would evaluate the claim.

18.     On August 7, 2017, the insureds, after reviewing Allstate's proposed scope of repairs, provided a revised estimate which detailed the damage to some 28 separate rooms, hallways and entry ways of the home. Plaintiffs also indicated that, as is typical of water intrusion claims, additional damage was likely to be discovered once demolition of the affected areas occurred. Plaintiffs requested that Allstate authorize the repairs so restoration could begin and to immediately address the ALE claim as they needed time to secure alternative living arrangements pending repairs to the home.

19.     Allstate's adjuster in Alabama provided Allstate's response to Plaintiffs'

revised estimate on August 30, 2017. This estimate was, apparently, prepared by the adjuster who inspected the home on a single occasion in late February and appears to be based on the inspection which occurred in February. Allstate did not provide any indication on how it was planning to address the pending ALE claim.

20.    In September of 2017, Allstate reassigned adjusters yet again (7th time). Plaintiffs communicated to this adjuster that the ALE claim needed to be resolved so that repairs could begin. Allstate was also advised that given the nature and extent of the demolition and restoration, the insureds belongings would need to be packed out and stored. Allstate finally agreed to pay $8,500.00 per month in ALE, indicating that the ALE payments would start when the repairs to the property began and would run for a period of 5 months. At the end of that period, Allstate indicated it would re-evaluate to determine if additional time was necessary to complete the repairs. The Allstate adjuster indicated that the Plaintiffs' belongings could simply be moved around or be covered during the demolition/repair.

21.    In October of 2017, Plaintiffs' adjuster addressed the unreasonableness of simply moving Plaintiffs' furnishings from room to room. Allstate finally agreed that packing out and storing Plaintiffs' belongings was appropriate subject to deletion of any charges for insuring the property while in storage as that was covered by the Allstate policy.

22.    In reliance on Allstate's representations, Plaintiffs scheduled the movers to begin the pack out process so the demolition and restoration process could begin. However, Allstate continued its pattern of delay. Rather than accept the mover's invoice, and deduct the quote for added insurance, Allstate insisted upon a new invoice

and then conditioned approval upon an agreed date as to when the demolition and repairs would be complete.

23.     Plaintiffs worked with the moving contractor and arranged for direct conversations between the Allstate adjuster and the moving company. Allstate finally agreed to cover the expenses for packing out and storing Plaintiffs' belongings.

24.     As to ALE, Allstate was obligated to pay the agreed upon monthly amount when the Plaintiffs had been displaced from their home. Rather than pay as it represented in its September 28, 2017 letter to the Plaintiffs, Allstate imposed a new condition, requiring a statement from the contractor as to when demolition would start and when the repairs would be complete. Allstate knew that the period of restoration was difficult to assess because the repair estimates were likely to be amended as demolition often reveals damage which cannot otherwise be seen. Allstate added this condition to payment after Plaintiffs were required to vacate the home.

25.     Following completion of the demolition, Plaintiffs' contractor inspected the home and discovered additional damage in areas which could previously be seen. In addition, initial estimates were reviewed as significant time had passed making some of the sub-contractor bids stale and no longer valid. At the end of January of 2018, Plaintiffs' adjuster, the contractor, and Allstate's adjuster had a conference call to discuss the claim. Allstate was again notified that the actual cost of packing out Plaintiffs' belongings increased substantially because a significant number of items had to be individually wrapped to avoid damage. The Allstate adjuster represented that he would submit the invoice with a recommendation that it be processed for payment. Allstate was also advised that there were additional items of damage which had been

discovered since the last estimate had been submitted, including items which were not able to be seen until demolition was complete. Plaintiffs requested that Allstate's adjuster come to the home for inspection and verification purposes. The adjuster refused to come to the home and advised the Plaintiffs to send pictures.

26. The revised scope of work was submitted to Allstate on February 5, 2018, along with detailed photos of the damaged areas in the home which corresponded not only to the scope of loss but also the sketches of the home that had been provided. As with the roof, Allstate's approval of the scope of work was necessary to begin restoration. Plaintiffs requested that Allstate promptly review the scope of work given that it was more than year since the claim had been opened.

27. Allstate advised that it would review the revised scope of loss and get back to the Plaintiffs, understanding full well that restoration efforts would not go forth pending their review. On February 22, 2018, Allstate's adjuster advised the Plaintiffs that he was in the process of reviewing the revised scope of loss and updating Allstate's estimate.

28. On March 12, 2018, some five weeks after the revised scope of loss had been submitted, Allstate's adjuster asked to speak to Plaintiffs' estimator about the contractors restoration bid. On March 15th, Plaintiffs' adjuster wrote to Allstate confirming a conference call and recapping the status, noting that despite earlier representations, Allstate had not responded to the request to pay the full pack out invoice. Plaintiffs also noted that Allstate continued to unreasonably delay ALE payments.

29. On March 21, 2018, the Allstate adjuster and the Plaintiffs' adjuster and

estimator had a conference call to discuss the claim. During that conversation, Allstate represented that the moving company invoice for the pack out would be processed for payment. Allstate further represented that it would continue to review the revised scope of loss consistent with the discussions had at the meeting. On April 4, 2018, Allstate's adjuster called Plaintiffs' adjuster and left a voicemail indicating that he was still trying to get through the revised scope of loss. This was basically two months after the scope of loss had been presented. The adjuster indicated he was trying to set aside "one hour a day" to get through the document. Many of the questions raised by the adjuster would have been resolved had he taken the time to simply go the home and meet with his own insureds and their contractors. As of April 4, 2018, Plaintiffs' home was still in a complete state of disrepair. No restoration of the interior had begun. Some 14 months had passed since the initial loss occurred and was first reported to Allstate. As Allstate was well aware, the home remained uninhabitable and had since the pack out in November of 2017.

30.    Allstate did not communicate with the Plaintiffs again until April 22, 2018. At that time, Allstate indicated that it was rejecting, in its entirety, the revised scope of loss stating that its original scope of loss incorporated all the operations that were needed to restore the property to its pre-loss condition. Allstate rejected the additional invoice from the moving company for the pack out of Plaintiffs' personal belongings. Allstate advised that the "matter was complete" and it closed the file knowing that repairs had yet to begin and that Plaintiffs' belongings remained in storage.

31.    The amount in controversy exceeds the minimum jurisdictional requirement of this Court.

## COUNT ONE

### BREACH OF CONTRACT

32.     Plaintiffs reallege each and every allegation previously stated in paragraphs 1-31 and incorporate by reference those allegations as if set forth at length herein.

33.     In January of 2017, and for several months thereafter, Plaintiffs' home was exposed to significant water intrusion secondary to roof failure which caused substantial exterior and interior damage. Plaintiffs' damages are compensable pursuant to the terms and conditions of its contract of insurance with Defendant Allstate.

34.     Plaintiffs made a timely claim for their losses and otherwise complied with all policy holder provisions in submitting their claim.

35.     Implicit within the terms and conditions of the policy is the obligation of the insurer to timely investigate, evaluate and assess the damages suffered by an insured as the result of a covered loss. Allstate failed to timely respond to the Plaintiffs' claims, failed to timely inspect the premises, failed to timely pay undisputed and/or agreed upon amounts, and ultimately denied otherwise covered losses under the policy of insurance. Allstate has breached its contractual obligations which has caused and continues to cause Plaintiffs to suffer damage.

III.

## COUNT TWO

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

36.     Plaintiffs reallege each and every allegation previously stated in

paragraphs 1-35 and incorporate by reference those allegations as if set forth at length herein.

37.     At all times relevant herein, Defendant Allstate owed Plaintiffs certain duties, obligations and responsibilities according to the subject policy of insurance including, but not limited to, a duty to respond to Plaintiffs' claim in a timely fashion; a duty to comply with the terms of the insurance policy; and, a duty to act fairly and in good faith with its insured. That duty includes adjustment of the claim consistent with industry standards and to adjust the claim consistent with the provisions of the Idaho Uniform Claims Practices Act, Idaho Code § 49-1301, et seq.

38.     Defendant Allstate intentionally, unreasonably, and/or negligently denied and/or delayed Plaintiffs' claim(s) which arise under the contract of insurance. Defendant Allstate's breach of the covenants of good faith and fair dealing have caused and continue to cause its insured to suffer both special and general damages in an amount to be more readily determined at the time and place set for trial.

IV.

## COUNT THREE

## NEGLIGENCE

39.     Plaintiffs reallege each and every allegation previously stated in paragraphs 1-38 and incorporate by reference those allegations as if set forth at length herein.

40.     At all times relevant hereto, Defendant Allstate owed to its insureds, the Plaintiffs, the duty to timely and reasonably adjust the claims arising under their policy of insurance and to do so in good faith and with fair dealing. Defendant Allstate failed to

timely inspect the Plaintiffs' home, failed to timely investigate the cause of the loss, failed to timely approve remediation efforts to keep the home secure and protected from the elements. Defendant Allstate changed adjusters on numerous occasions, unreasonably delayed the adjustment of the claims, assigned adjusters to the claim who either had not seen the insured premises and/or who refused to inspect the insured premises, so as to gain an understanding as to the nature and quality of the insured home, including the furnishings, décor and general quality. When Defendant Allstate finally closed the file on the Plaintiffs' insurance claim(s), almost 15 months had elapsed from the date of loss and at the time the file was closed, restoration had yet to begin.

41.    As a direct and proximate result of Defendant Allstate's negligent conduct, Plaintiffs have and continue to suffer damage.

IV.

## DAMAGES

As a direct, consequential and/or proximate result of the actions and/or omissions of the Defendant Allstate, Plaintiffs have suffered both general and special damages, including but not limited to losses properly covered under their policy of insurance. Plaintiffs will seek all damages allowed by law.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in accordance with the provisions of Rule 38 of the Idaho Rules of Civil Procedure.

## DEMAND FOR ATTORNEY FEES

As a consequence of the complaints, causes, and claims stated herein, the Plaintiffs have been required to retain the Law Offices of Comstock & Bush, and have

incurred, and will incur, costs and reasonable attorney's fees related thereto, for which Plaintiffs are entitled to a separate award of reimbursement pursuant to Idaho Code §§ 41-1839, 12-120, 12-121, 12-123, and Rule 54(d)(1), Idaho Rules of Civil Procedure. Plaintiffs hereby respectfully request that they be awarded reasonable attorney's fees and costs incurred herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.  As to Count One, for all damages as allowed by law and prejudgment interest in the maximum amount allowable by law;

2.  As to Count Two, for all damages as allowed by law and prejudgment interest in the maximum amount allowable by law;

3.  As to Count Three, for all damages as allowed by law and prejudgment interest in the maximum amount allowable by law;

4.  For reasonable attorneys' fees and costs of suit; and,

5.  For such other and further relief as this Court deems just and equitable in these premises.

DATED This 13th day of August, 2018.

COMSTOCK & BUSH

_/s/ John A. Bush_____
John A. Bush

_wolfe_

Michael L. Haman
HAMAN LAW OFFICE, P.C.
923 North 3rd Street
P.O. Box 2155
Coeur d'Alene, ID 83816-2155
Telephone: (208) 667-6287
Facsimile: (208) 676-1683
Email: mlhaman.law@gmail.com
ISB # 4784

Attorneys for Defendant

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT
OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| NANCEE GERBER-SIGGELOW, individually, and MICHAEL WOLFE, individually, | Case No. CV01-18-14927 |
| Plaintiffs, | NOTICE OF APPEARANCE |
| vs. | Fee Category: I 1 (a): $136.00 |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, a foreign corporation, | |
| Defendant. | |

TO:     THE ABOVE-ENTITLED PLAINTIFFS AND THEIR ATTORNEY OF RECORD, AND
TO THE CLERK OF THE ABOVE-ENTITLED COURT:

YOU AND EACH OF YOU WILL PLEASE TAKE NOTICE that the undersigned hereby

appears as Attorney of Record for the Defendant the above-entitled action.

Dated this _31_ day of August, 2018.

HAMAN LAW OFFICE, P.C.

By_____
Michael L. Haman
Attorneys for Defendant

DEFENDANT'S
EXHIBIT
_B_

NOTICE OF APPEARANCE - 1

<u>CERTIFICATE OF SERVING</u>

I HEREBY CERTIFY that on this _3_ day of August, 2018, I served a true and correct copy of the foregoing NOTICE OF APPEARANCE by the method described below to:

John A. Bush
Law Offices of Comstock & Bush
199 N. Capitol Blvd, Ste. 500
PO Box 2774
Boise, ID 83701
Fax: 208 344-7721
Email: jabush@comstockbush.com

_____ U.S. First class mail
_____ Fax
___✓___ Email

Michael L. Haman

 CT Corporation

**Service of Process Transmittal**
08/20/2018
CT Log Number 533911422

**TO:** Lina Lee
Allstate Insurance Company
7632 SW Durham Rd Ste 200, McO Office
Tigard, OR 97224-7584

**RE:** **Process Served in Idaho**

**FOR:** Allstate Property and Casualty Insurance Company  (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | NANCEE GERBER-SIGGELOW, etc. and MICHAEL WOLFE, etc., Pltfs. vs. Allstate Property and Casualty Insurance Company, etc., Dft. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, Interrogatories |
| **COURT/AGENCY:** | Ada County, Fourth Judicial District, ID Case # CV011814927 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boise, ID |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 08/20/2018 postmarked on 08/16/2018 |
| **JURISDICTION SERVED :** | Idaho |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service |
| **ATTORNEY(S) / SENDER(S):** | John A. Bush LAW OFFICES OF COMSTOCK & BUSH 199 N. Capitol Boulevard, Suite 500 P.O. Box 2774 Boise, ID 83701 208-344-7700 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/21/2018, Expected Purge Date: 08/26/2018 |
| | Image SOP |
| | Email Notification,  Lina Lee  Lina.Lee@allstate.com |
| | Email Notification,  Annell Nelson  ch143@allstate.com |
| | Email Notification,  Wade Pearson  wade.pearson@allstate.com |
| | Email Notification,  Suzy LaBel  Suzy.LeBel@allstate.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 921 S. Orchard Street Suite G Boise, ID 83705 |
| **TELEPHONE:** | 954-473-5503 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This Information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.


DEFENDANT'S EXHIBIT
C



CERTIFIED MAIL

7016 0750 0000 2166 1431

FIRST CLASS

U.S. POSTAGE >> PITNEY BOWES

ZIP 83702 $ 008.04
02 4W
0000359175 AUG 16 2018

STATE OF IDAHO
**DEPARTMENT OF INSURANCE**
P.O. Box 83720
Boise, Idaho 83720-0043

ALLSTATE        PROPERTY        AND
CASUALTY INSURANCE COMPANY
c/o CT CORPORATION SYSTEM
921 S ORCHARD ST STE G
BOISE, ID 83705-1992