UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NANCEE GERBER-SIGGELKOW, individually, and MICHAEL WOLFE, individually,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, a foreign corporation,<br><br>Defendant. | Case No. 1:18-cv-00408-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

This case involves a dispute over the adjustment and payment of a claim for benefits brought under a homeowners insurance policy issued by Allstate Property and Casualty Insurance Company on the home of Plaintiffs, Nancee Gerber-Siggelkow and Michael Wolfe. Plaintiffs filed a claim under the policy when their home was damaged during severe weather events in January 2017. Defendant paid for some but not all of the damages sought by Plaintiffs. As a result, Plaintiffs filed this lawsuit.

Presently before the Court are motions for partial summary judgment filed by both parties (Dkt. 38, 42) and Plaintiffs' motion to amend (Dkt. 40) the complaint to add a claim for punitive damages. The motions are fully briefed and a hearing was conducted on April 13, 2021. After careful consideration of the record, the parties' briefing and supporting materials, and oral argument, the Court will grant in part and deny in part each of the motions for partial summary judgment. The Court will deny the motion to add a claim for punitive damages.

## FACTUAL BACKGROUND

Plaintiffs are the named policyholders on the insurance policy issued by Allstate for the residence located at 5186 N. Lakemont Lane in Garden City, Idaho, effective from May 19, 2016 to May 19, 2017. (Dkt. 45-11.)[1] On January 10, 2017, Plaintiff Gerber-Siggelkow discovered a section of the ceiling in the dining room had collapsed and water had entered the home. (Dkt. 45-18, Gerber Depo. at 63.) Plaintiff Gerber-Siggelkow reported the damage to Allstate's local insurance agent on the same day. (Dkt. 45-1, Claim History ("CH") at 462, 464, 466.) Allstate opened a claim, Claim Number 0442033676, and assigned a coordinating adjuster on January 12, 2017. (Dkt. 45-1, CH at 460-62.)

Over the course of the ensuing sixteen months, Plaintiffs and Defendant dueled over resolution of the claim of loss, disputing what damages were covered under the

---

[1] Throughout this Order, the ECF docket numbers will be used when citing to the record. Where the parties have submitted duplicative copies of the same document, e.g., the homeowners insurance policy, the Court will cite to only one of the copies for ease of reference and consistency.

**MEMORANDUM DECISION AND ORDER - 2**

policy and the extent of the coverage. Specifically, Plaintiffs sought coverage for repair or replacement of the roof; interior repairs; Additional Living Expenses ("ALE"); the costs of packing and storing their belongings during repairs; damaged personal property; and mitigation expenses.[2] The facts relevant to each are discussed in turn below.[3]

### 1. The Roof

On January 25 and 29, 2017, Allstate adjusters David Gross and Brian Collins conducted separate field inspections of the interior and exterior of the Plaintiffs' home, but neither inspected the roof due to the presence of ice and snow. (Dkt. 45-1, CH at 451.)[4] Plaintiffs hired their own roofing contractor, Todd Stern with Rocky Mountain Exteriors, LLC, who inspected the roof on February 1, 2017. Stern identified extensive ice dam formation and recommended removal of the ice and snow to prevent further leaking and roof damage. The following day, adjuster Collins requested an invoice from Stern for the ice dam removal. (Dkt. 45-1, CH at 444.)

Around this time, Plaintiffs contend that Defendant closed its file on the claim. (Dkt. 44 at 3.) Defendant disagrees, arguing it was continuing to investigate the claim. (Dkt. 55 at 3.) In any event, on February 13, 2017, general contractor Matthew Evans with Restoration Pro, Inc., reported the snow and ice had melted and that additional

---

[2] While not entirely clear from the present record, it appears only one policy claim, Claim Number 0442033676, was opened by Allstate relating to the damage to the residence caused by the January 2017 weather event. Plaintiffs' various requests for coverage were encompassed within the single claim for benefits.

[3] The facts are stated as contained in the present record. The Court notes the parties' disputes concerning the facts where relevant.

[4] Allstate assigned various different adjusters to the claim during the time relevant to this lawsuit.

**MEMORANDUM DECISION AND ORDER - 3**

damage was becoming apparent. (Dkt. 45-1, CH 414,, 420, 429, 438.) On February 16, 2017, Plaintiffs' roofing contractor, Stern, provided Allstate with an estimate to repair 80% of the roof and an estimate to replace the entire roof. (Dkt. 45-2, Roof Est.) On March 3, 2017, Allstate re-inspected the home with Stern and Plaintiff Gerber-Siggelkow, but did not inspect the roof because it was wet. (Dkt. 45-1, CH at 414.)

Following the re-inspection, Allstate hired a structural engineer to investigate the cause of damage and cracking in several locations of the residence; assess the condition of the roof; determine whether the roof was damaged by the snow event; and determine whether the roof could be repaired. (Dkt. 45-1, CH at 413; Dkt. 45-3.) The engineer inspected the roof on March 7, 2017, and issued a report dated March 15, 2017. (Dkt. 45-3.) The report noted that the roof's general condition, which had a significant number of curled, cracked, and loose shakes, was consistent with a 20-year-old wood shake roof and that the deterioration was not caused by the snow event in January 2017. (Dkt. 45-3, at 2, 6.) However, the engineer concluded that the water intrusion and associated damages were caused by the formation of ice dams in the low slope valleys of the roof and along the gutter line during the January 2017 snow storm. (Dkt. 45-3 at 2, 7.) The report recommended removal of roof shakes in areas where ice dams, snow drifts, or leaks occurred to confirm the condition of the sheathing and replacement of the sheathing if significant damaged or deterioration was found. (45-3 at 6.)

On March 24, 2017, adjuster Kristee Eldridge verbally informed Plaintiffs that, based on the results of the engineer's report, the interior damages would be covered but the roof was not a covered loss. (Dkt. 45-1, CH at 403.) On March 25, 2017, Allstate

issued a letter to Plaintiffs denying coverage for the roof, citing provisions of the policy relating to wear and tear, and aging; failure of insured to take steps to preserve property; and weather conditions. (Dkt. 45-4.)

On March 30, 2017, several communications were exchanged among Plaintiffs, Stern, and Allstate regarding the denial of coverage for the roof. (Dkt. 45-1, CH at 398-401.) Throughout this time, Plaintiffs were reporting that additional damage was occurring to the residence due to the unrepaired roof.

On April 5, 2017, adjuster Collins inspected the exterior and interior of the residence, including the roof, with Stern. (Dkt. 45-1, CH at 396-97.) Collins noted several areas of damage both inside and outside of the home. Collins requested a revised estimate from Stern for the roof damage and a second engineering report. (Dkt. 45-1, CH at 383-396.)

On April 18, 2017, the structural engineer conducted a second inspection and issued a second report concluding the initial damage to the roof itself caused by the formation of ice dams in early January 2017, allowed additional water intrusion damage to occur during later major rain events. (Dkt. 45-13 at 2, 6-7.) Allstate approved replacement of the entire roof in early May 2017. (Dkt. 45-1, CH at 373.) The roofing project was completed in late May 2017.

## 2.     Interior Repairs: Entry and Office

At the initial inspection on January 25, 2017, adjuster Gross noted damage to the interior of the residence in the formal dining room. (Dkt. 45-1, CH at 451.) Other adjusters also documented damage to interior rooms during inspections in January, April,

and May. (Dkt. 45-1, CH at 396, 447) (Collins noting damage to the office in January and in the entry during April and May inspections); (Dkt. 45-1, CH at 371-72) (Eldridge noting water damage in entry and other rooms during the initial inspection).

On June 2, 2017, Evans, the contractor with Restoration Pro, Inc., submitted a general estimate to Allstate for all repairs including the entry and office, and the cost to replace the roof, totaling $945,128.00. (Dkt. 39-8; Dkt. 45-6; Dkt. 45-1, CH at 339.)[5] On June 5, 2017, adjuster Steven Weekes requested that Evans resubmit his estimate using the Xactimate program or a line item breakdown of the visible damage cause by the snow event. (Dkt. 45-1, CH at 337-38.)

On June 6, 2017, Weekes visited the home and met with the Plaintiffs and Evans. What transpired at the meeting and the resulting ramifications are in dispute. Plaintiffs assert that, at the meeting, Weekes told them they could either accept the amount offered by Allstate to resolve the claim or they could sue. (Dkt. 45-17, Evans Depo., at 75, 118; Dkt. 45-18, Gerber-Siggelkow Depo., at 51-52; Dkt. 45-19, Wolfe Depo. at 92, 94.) Plaintiffs contend the meeting with Weekes prompted them to hire Adjusters International ("AI"), a public adjuster, on June 9, 2017, to represent them in further handling of the claim. (Dkt. 45-18, Gerber-Siggelkow Depo., at 142-44.) Defendant argues the involvement of AI contributed to delay and difficulty in resolving the claim. (Dkt. 39-1 at ¶ 16; Dkt. 55 at 4.)

---

[5] Evans performed the initial remediation work on January 10, 2017, the same day the damage was initially discovered and reported by Plaintiffs to Allstate. (Dkt. 45-1, CH at 454, 466.)

**MEMORANDUM DECISION AND ORDER - 6**

On August 7, 2017, Plaintiffs/AI submitted a revised estimate from Evans to Allstate totaling $515,176.38, which included repairs to the entry and office. (Dkt. 45-7; Dkt. 45-1, CH at 310.) In response, on August 31, 2017, adjuster Weeks emailed Allstate's estimate dated August 16, 2017, to Plaintiffs/AI for repairs totaling $248,748.86. (Dkt. 45-8.) Allstate's estimate did not include any repairs to the entry and allocated costs for only two coats of paint around the windows in the office. Also on August 31, 2017, adjuster Weekes noted in the claim file that there was no visible damage to the office or entry. (Dkt. 45-1, CH at 177.) On September 6, 2017, Allstate issued a policy payment in the amount of its August 16, 2017 estimate. (Dkt. 45-8; Dkt. 45-1, CH at 170, 177.) The circumstances surrounding Allstate's August 2017 estimate and September 2017 payment are disputed, with the parties continuing to disagree about the scope of repairs and other matters relevant to the claim. (Dkt. 41 at 8-9.) Nevertheless, repair work began on November 1, 2017, and was expected to take eight months to complete. (Dkt. 39-8 at 1.)

On February 5, 2018, Plaintiffs/AI submitted a third estimate of repairs generated by Evans totaling $551,735.54, which again included repairs to the entry and office. (Dkt. 39-9; Dkt. 45-15.) Adjuster John Cole reviewed the estimate for Allstate and made several comments, notably rejecting repairs to the entry and office because no damage related to ice damming was observed. (Dkt. 39-9; Dkt. 45-15; Dkt. 45-1 at 41.)[6] Over the course of the weeks that followed, Cole and representatives from AI exchanged

---

[6] Notably, adjuster Cole reviewed the estimate from his office in Alabama. The other Allstate adjusters who worked on the claim were located in Idaho.

communications regarding their disagreements over the scope of the work contained in the third estimate. (Dkt. 45-1, CH at 38, 41, 47, 49-50, 53, 55-56, 59, 61.)

On April 12, 2018, adjuster Cole sent Plaintiffs/AI his review and rejection of the third estimate with his line-item comments, and informed Plaintiffs/AI that he had determined Allstate's estimate was the correct amount for the total replacement cost of the repair work. (Dkt. 45-1, CH at 41); (Dkt. 45-15.) On April 22, 2018, adjuster Cole issued a letter to AI rejecting the third estimate of the cost for the repairs, stating Allstate's estimate was sufficient to restore the property to pre-loss condition and that Allstate considered the matter to be complete. (Dkt. 45-10.) Nevertheless, in late September 2019, Evans submitted an invoice for the cost of the interior repairs in the amount of $347,645.98. (Dkt. 39-9 at 53.)

### 3. Additional Living Expenses (ALE)

Prior to the start of the interior repairs, the parties exchanged proposals regarding Plaintiffs' living arrangements during the repair work. (Dkt. 45-1, CH at 162, 170, 227, 298, 310, 318, 369.) Plaintiffs sought ALE under the policy for the costs associated with their displacement from the home while the repairs were completed. Plaintiffs submitted an estimate of the fair rental value for a comparable home of $8,500.00-$11,000.00 per month, and an estimate that the repairs would begin on November 1, 2017, and would take eight months to complete. (Dkt. 39-8; Dkt. 45-1, CH at 170.)

On September 26, 2017, Allstate agreed to pay $8,500.00 per month, for five months of ALE under the policy, commencing when the repair work began. (Dkt. 45-16.) At the end of the five months, the ALE would be re-evaluated to determine whether

additional time was needed and whether monthly payments would continue. (Dkt. 45-16.)

Plaintiffs received ALE payments totaling $8,500.00 per month for the time period

between November 2017 and June 2018, a total of eight months.

### 4.    Pack-Out and Storage Costs

In October 2017, Defendant approved an estimate from Peasley Transfer and

Storage (Peasley) for packing, moving, and six months of storage for Plaintiffs'

belongings during the repair work that totaled $28,458.70. (Dkt. 45-9.) When pack-out

began in late October, Plaintiffs requested that Peasley take additional care with the

packing, moving, and storing their belongings. On November 29, 2017, Peasley

submitted an invoice to Allstate for $43,520.54, which included the costs of the pack-out

and for storage through December 24, 2017. (Dkt. 45-14.)[7]

Between November 2017 and April 2018, the parties disagreed about the amount

covered by the policy for the pack-out and storage costs. (Dkt. 45-1, CH at 41, 53, 71, 87,

88.) Plaintiffs maintained the policy required Allstate to pay the actual amount of the

invoice, because the expense was reasonable and warranted under the circumstances.

Defendant disputed the invoiced amount and requested further substantiation for the

amount that exceeded the estimate. Ultimately, on April 22, 2018, Defendant agreed to

pay the amount of the initial estimate, but refused the additional amount billed, stating the

explanation given for the increased costs was not "plausible." (Dkt. 45-10.)

---

[7] Additional storage costs were to be paid on the 25th of each month going forward. (Dkt. 45-14.)

### 5. Personal Property

On January 10, 2017, the date of the initial report of loss, the claim history notes that the insured had reported damage to several pieces of "high-end" furniture, including a china hutch. (Dkt. 45-1, CH at 466.) On January 12, 2017, Plaintiff Gerber-Siggelkow informed the Allstate adjuster that a dining room table, eight chairs, two hutches, and a chandelier had been damaged by the ceiling collapse. (Dkt. 45-1, CH at 461.) The claim history reflects that Plaintiff Gerber-Siggelkow made later additional inquiries to Defendant regarding whether the damaged furniture was covered. (Dkt. 45-1, CH at 401, 440.) Allstate has not paid for damage to the personal property. (Dkt. 45-1, CH at 451.)

### 6. Mitigation Costs

Allstate paid Plaintiffs' roofing contractor for performing ice dam mitigation and snow removal from the roof in February 2017. (Dkt. 45-1, CH at 444-45; Dkt. 58-1, CH at 393.) In April 2017, the Plaintiffs had the roof tarped to prevent further water intrusion. (Dkt. 45-1, CH at 392.) The tarps were removed during the engineer's second inspection, and the roof was later re-tarped with the adjuster's approval and allowance for the cost. (Dkt. 45-1, CH at 408) ("I advised to have the tarp replaced and we would allow for the charges.") Plaintiffs' roofing contractor submitted an invoice for tarping totaling $5,136, which Defendant declined to pay, stating mitigation costs were the responsibility of the insured. (Dkt. 45-1, CH at 386.)

## PROCEDURAL BACKGROUND

As a result of the foregoing, on August 13, 2018, Plaintiffs filed this action against Allstate alleging claims for breach of contract, breach of the implied covenant of good

faith and fair dealing, and negligence. (Dkt. 1.)[8] The parties each filed motions for partial summary judgment and Plaintiffs filed a motion for leave to amend complaint to add punitive damages. (Dkts. 38, 40, 42.) The Court makes the following determinations.

## STANDARD OF LAW

Summary judgment is appropriate where a party demonstrates that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact "that may affect the outcome of the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact and a favorable judgment is due as a matter of law. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, the non-moving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). The non-moving party must go beyond the pleadings and show "by…affidavits, or by the depositions, answers to interrogatories, or admissions on file," that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324. The Court must grant summary judgment if the non-moving party "fails to make a showing

---

[8] The complaint was initially filed in state court and, thereafter, properly removed pursuant to 28 U.S.C. § 1332. (Dkts. 1, 2.) All parties have consented to proceeding before a United States Magistrate Judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Dkt. 8.)

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

## ANALYSIS

Underlying all of the parties' arguments is their vehement disagreement regarding who complied with the terms of the insurance policy and who did not. Both parties maintain the other was in breach.

Plaintiffs contend Defendant unreasonably denied benefits due under the policy and delayed resolution of the claim. In particular, Plaintiffs argue Defendant denied and disputed damages that were clearly covered by the policy's property protection provisions and the conditions providing that repairs to the building structure will be "for equivalent construction for similar use" and replacement of personal property will be "of like kind and quality." (Dkt. 45-11 at 7-12, 18, 19.) Defendant, on the other hand, asserts Plaintiffs failed to comply with the policy terms requiring that Plaintiffs provide notice and sufficient documentation to substantiate the losses claimed. (Dkt. 45-11 at 16-17.)[9]

---

[9] "Section I Conditions" states, in relevant part:

**3.  What You Must Do After A Loss**

In the event of a loss to any property that may be covered by this policy, **you** must:
- a)  immediately give **us** or **our** agent notice.
- b)  protect the property from further loss.
- c)  separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
- d)  give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permits us to make copies.
- e)  produce receipts for any increased costs to maintain **your** standard of living while you reside elsewhere….
- f)  as often as **we** reasonably require: 1) show **us** the damage property….

Further, Defendant contends Plaintiffs' actions contributed to the delay in resolving the policy claim.

### 1.    Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs seek summary judgment on their claim for breach of contract. (Dkt. 43.) In Idaho, "[t]he elements for a claim for breach of contract are: (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (Idaho 2013). Here, the parties' dispute centers on the second element - breach.

Plaintiffs argue Defendant breached the terms of the insurance policy, as a matter of law, by delaying, denying, and failing to fully pay Plaintiffs' claim for: 1) interior repairs to the entry and office; 2) twelve months of ALE; 3) the full amount of pack-out and storage costs; 4) personal property damage; and 5) mitigation costs. (Dkt. 43.)[10] Defendant disputes that it breached the policy, asserting genuine issues of material fact exist regarding whether it delayed, denied, or withheld benefits otherwise due under the policy. (Dkt. 49.)

---

g)      within 60 days after the loss, give us a signed sworn proof of the loss [as specified].
**We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

(Dkt. 45-11 at 16-17) (emphasis in original.)

[10] Plaintiffs' contentions regarding Allstate's handling of the roof repairs relate to the bad faith claim, which is the subject of Defendant's motion discussed below, not the breach of contract claim. (Dkt. 42.)

## A. Interior Repairs: Entry and Office

Plaintiffs argue Allstate breached the terms of the policy by refusing to pay for "undisputed" interior damages to the entry and office that were covered by the policy. (Dkts. 43, 56.) Plaintiffs assert Allstate improperly denied coverage for the interior repairs to the entry and office when the damage had been noted by the initial adjusters during their January 2017 inspections and in both engineer's reports, despite Weekes' later claim that there was "no visible damage in this area." (Dkt. 45-1, CH at 396, 447; Dkt. 45-3 at 6; Dkt. 45-13 at 6-7.)

Defendant argues that a genuine issue of material fact exists as to whether the interior repair costs claimed were otherwise due under the policy. Defendant asserts it requested, as allowed under the policy terms, reasonable documentation and substantiation for the interior repairs, but that Plaintiffs/AI failed to comply. (Dkt. 49 at 6-7.) In turn, Plaintiffs maintain they provided ample documentation to substantiate the claimed repairs and dispute Defendant's argument that it reasonably pursued resolution of the disagreement over the repair estimates. (Dkts. 43, 51.)

In reviewing the record before it, the Court finds genuine issues of material fact with regard to whether and to what extent the interior repairs to the entry and office were covered under the policy. That the early adjusters and the engineer noted damage to the entry and office does not, in and of itself, establish as a matter of law that Allstate was obligated under the policy to pay for repairs to the two rooms, as suggested by Plaintiffs. Indeed, the many exchanges between the parties concerning the estimates and revised estimates outlined above, evidences the existence of genuine issues of material facts in

dispute with regard to whether the entry and office repairs were covered under the policy. Whether Defendant's denial of coverage breached the policy in the face of the materials provided by Plaintiffs to substantiate the repairs sought is in dispute and must be determined by the jury.

The Court recognizes that Plaintiffs fiercely disagree with Defendant's contention that it made a genuine effort to resolve the disputes over the scope of the interior repairs. Notably, Plaintiffs argue that the claim was closed shortly after adjuster Cole provided his comments on the repair estimate to AI in April 2018, without making any requests for further substantiation or allowing Plaintiffs time to respond. (Dkt. 51 at 14.) Given the close timeframe between AI receiving Cole's comments on April 12, 2018, and the claim being closed on April 22, 2018, approximately ten days, Defendant may have difficulty proving it reasonably sought and allowed Plaintiffs to provide substantiation after receiving Cole's comments.

Nonetheless, Defendant has shown genuine issues of material fact are in dispute concerning whether it breached the policy with regard to the claim for damages to the entry and office. That is to say, there is a viable dispute over whether there was damage to the entry and office caused by the snow event in January 2017, and the extent of that damage, if any.

## B.    ALE, Pack-out, and Storage Costs

Plaintiffs contend Defendant breached the policy by refusing to pay for twelve months of ALE, as well as the actual costs of packing-out their home and storing their belongings during the repair work. Defendant argues it paid the costs of ALE, pack-out,

and storage that it was obligated to pay under the policy, and that Plaintiffs failed to provide substantiation for any additional amounts as required by the policy.

The Court finds genuine issues of material fact exists regarding whether Defendant breached the policy by not paying for twelve months of ALE and not paying the actual costs of pack-out and storage. These arguments harken back to the parties' overarching dispute concerning which party failed to comply with the terms of the policy.

### 1.    ALE

The policy provision relating to ALE states that Allstate "will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover. . . makes your residence premises uninhabitable." (Dkt. 45-11 at 10.) The provision further provides:

> Payment for additional living expenses as a result of a covered loss…will be limited to the least of the following:
> 1) the time period required to repair or replace the property we cover, using due diligence and dispatch; or
> 2) if you permanently relocate, the shortest time for your household to settle elsewhere; or
> 3) 12 months.

Here, Defendant paid for eight months of ALE at a monthly rate of $8,500.00, based on the estimates provided by Plaintiffs. (Dkt. 39-8 at 1; Dkt. 45-16.) Defendant maintains Plaintiffs failed to "produce receipts for any increased costs to maintain your standard of living while you reside elsewhere" as required by the policy or any other substantiation supporting ALE beyond the eight months Allstate agreed to pay. (Dkt. 45-11 at 16-17.) In response, Plaintiffs do not contend that they provided any particular documentation or notice supporting ALE for twelve months. Instead, Plaintiffs argue

Allstate knew, or should have known, the repair work was not complete after eight months due to the ongoing discussions between the parties regarding the extent of the repairs. (Dkt. 56 at 4-5.) Indeed, Plaintiffs maintain Allstate should have paid for the full twelve months allowed for under the policy because there is no dispute that the repairs were not complete as of November 1, 2018, twelve months from the date the first ALE payments were made. (Dkt. 43 at 7-8.) Plaintiffs mere assertion, however, does not establish that Defendant was obligated to pay ALE for the full twelve months under the policy, as a matter of law. Just the opposite, the record establishes that there is a genuine dispute concerning whether Defendant breached the policy by not paying for twelve months, as opposed to eight months, of ALE.

## 2. Pack-Out and Storage Costs

With regard to the pack-out and storage costs, Plaintiffs assert the initial estimate provided to Defendant was subject to change once the work was completed and that the actual costs are covered under the policy and should have been paid. (Dkt. 45-9; Dkt. 45-14.) Defendant contested the final amount of the invoice from Peasley, arguing Plaintiffs' request for "white glove treatment" of their belongings increased the pack-out costs and was not approved in advance or properly noticed and documented as required under the terms of the policy. (Dkt. 49 at 9-10.) Further, Defendant questioned the moving company's failure to adequately assess the costs for pack-out in their estimate. These are disputed issues the jury must decide.[11]

---

[11] As to the costs for storage, Defendant appeared to concede at the hearing that the discrepancy between the six months of storage costs and eight months of ALE paid by Allstate was an oversight. The Court

On this record, the Court cannot conclude, as a matter of law, that Defendant was obligated under the policy to pay the invoice presented by Peasley for pack-out and storage costs, when Defendant disputed the amount of the invoice in relation to the estimate. The policy contains provisions concerning the requisite notice, documentation, and substantiation needed to support all claimed losses. (Dkt. 45-11 at 10, 16-17.) Defendant has pointed to evidence in the record showing it requested further explanation for the additional costs claimed on the final invoice and, ultimately, that it concluded the amount charged above the initial estimate was not covered because the explanation given was not plausible. (Dkt. 45-10.) This gives rise to a genuine issue of material fact as to whether Allstate breached the policy by refusing coverage of the full amount of the pack-out and storage costs.

### C.    Personal Property

Plaintiffs argue Defendant breached the policy by failing to open and adjust a claim for damaged items of personal property, effectively denying a covered loss. (Dkts. 43, 56.) Specifically, Plaintiffs assert they provided Defendant sufficient information regarding damage to their dining table and chairs, dining hutch, and chandelier, to constitute proof of loss and require Defendant to open and investigate the claim. (Dkt. 45-1, CH at 451, 461, 466.) Defendant maintains Plaintiffs failed to present proof of loss for the personal property as required by the terms of the policy and, therefore, Defendant was

---

notes the concession here for completeness, but makes no determination at this time regarding the storage costs. This concession does not resolve the other questions that preclude summary judgment.

not obligated to open a claim or cover the furniture under the policy. (Dkt. 49 at 10; Dkt. 55.)

Here again, genuine issues of material fact exist concerning whether either of the parties breached the terms of the policy. Namely, whether Plaintiff complied with the policy terms requiring proper notice and documentation of claimed losses and, conversely, whether Defendant breached the policy by denying payment of covered losses.

The claim history reflects that Plaintiffs informed the local Allstate agent that certain items of personal property were damaged on the same date they initially reported the ceiling collapse - January 10, 2017. (Dkt. 45-1, CH at 466.) Allstate denied coverage of the personal property items on January 26, 2017. (Dkt. 45-1, CH at 451) (Adjuster Gross stating that "[a]t this time, I did not provide coverage for UPP items….") However, Plaintiffs made additional, later inquiries regarding coverage for the damaged items of personal property. (Dkt. 45-1, CH at 401, 440, 461.)

On this record, the Court finds Defendant has established the existence of a genuine issue of material fact, albeit barely. Defendant's scant response asserting that Plaintiffs failed to provide sufficient proof of loss for the personal property, when coupled with the materials supporting Defendant's motion for partial summary judgment, gives rise to a genuine dispute. (Dkts. 39, 49, 55.)

Notably, Defendant does not address the Idaho caselaw relied on by Plaintiffs in support of their position that they submitted a sufficient proof of loss. (Dkt. 56 at 7) (citing *Brinkman v. Aid Ins. Co.*, 766 P.2d 1227, 1230-31 (Idaho 1988)) (holding a proof

of loss is sufficient when the insured provides the insurer with enough information to allow the insurer a reasonable opportunity to investigate and determine its liability)). However, on the record here, there is a genuine dispute for the finder of fact to determine concerning whether the information Plaintiffs provided to Allstate was sufficient for a proof of loss. *See Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 130 P.3d 1127, 1131 (Idaho 2006) ("An analysis to determine when a proof of loss is sufficient is a question of fact.").

### D. Mitigation Costs

Plaintiffs argue Defendant breached the policy by refusing to pay for tarping the roof, asserting that: 1) Defendant paid for other mitigation costs in the form of snow and ice dam removal in January 2017, and 2) Defendant's adjusters were aware the roof needed to be tarped and told Plaintiffs that Allstate would pay the tarping expense, at least as to the cost for re-tarping following the engineer's inspection. (Dkt. 56.) Defendant's only response on this issue reads: "Plaintiffs were obligated under the policy to mitigate, to protect the property and to separate damaged from undamaged property. These provisions do not provide that Allstate will reimburse for the same." (Dkt. 49 at 10) (internal citation omitted.)

Having reviewed the record and materials provided by the parties, the Court finds Plaintiffs have shown that, when viewed in the light most favorable to Defendant, the evidence establishes there is no genuine issue of material fact in dispute on this aspect of Plaintiffs' breach of contract claim. Allstate does not dispute that: it paid for other mitigation costs; its adjusters were aware of and worked to confirm that the roof was

being tarped; and most importantly, that its adjuster directed its insured on March 3, 2017 to have the tarp replaced after it was removed during the engineer's inspection and that "[Allstate] would allow for the charges." (Dkt. 45-1, CH at 392, 393, 408.) Further, Allstate does not dispute that an invoice for the tarping costs was submitted to it on April 12, 2017, and has not been paid. (Dkt. 45-1, CH at 386.) As such, Plaintiffs have identified undisputed evidence showing Defendant agreed to pay the tarping costs, at least as to the cost to re-tarp the roof following the engineer's inspection.

The mere reference to the insurance policy in the face of the undisputed record fails to satisfy Defendant's burden to demonstrate a genuine issue exists. *Cline*, 200 F.3d at 1229 (The non-moving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment.); *Celotex*, 477 U.S. at 324 (The non-moving party must go beyond the pleadings and show "by…affidavits, or by the depositions, answers to interrogatories, or admissions on file," that a genuine dispute of material fact exists). Unlike the other cost items discussed above, Defendant has not presented evidence that it disputed the amount of the tarping invoice, that there was insufficient documentation, or that further substantiating documentation was requested but not provided. Importantly, Defendant does not dispute that its adjuster approved in advance the charges for re-tarping the roof after the engineer's inspection.

Accordingly, the Court will grant Plaintiffs' motion for partial summary judgment, in part, on the breach of contract claim for mitigation costs. The Court makes no determination at this time regarding the amount of the mitigation costs Allstate must pay as it is unclear whether Allstate agreed to pay for the initial tarping of the roof and

whether the invoice submitted includes the cost of the initial tarping or only the re-tarping. The motion is otherwise denied.

## 2. Defendant's Motion for Partial Summary Judgment

Defendant argues Plaintiffs' claims are limited to breach of contract and insurance bad faith, and moves for partial summary judgment on the bad faith claim. (Dkt. 39.) Plaintiffs agree with Defendant's characterization of the claims, but assert material issues of fact preclude summary judgment on the bad faith claim. (Dkt. 51.)

### A. Plaintiffs' Tort Claim for Insurance Bad Faith

Plaintiffs' complaint alleges claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence. (Dkt. 1.) Defendant asserts Plaintiffs' tort claim is for one of bad faith, arising out of the alleged breach of the covenant of good faith implied in insurance contracts. (Dkt. 39.) There is, Defendant contends, no separate negligence claim. During the motion hearing, the parties agreed on this point and addressed their arguments concerning the tort claim as one of insurance bad faith. The Court's evaluation of the law is consistent with the position taken by the parties at the hearing.

Idaho Courts have routinely held that "[a]n implied duty of good faith and fair dealing exists between insurers and insureds in every insurance policy." *Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 395 (Idaho, 2010). An independent tort claim for breach of the implied covenant of good faith and fair dealing in the context of a first-party insurance action in Idaho, is considered a claim of bad faith. *See Rice v. Union Central Life Ins. Co.*, No. CV–05–216–S–BLW, 2006 WL 3523538 at *6 (D. Idaho

Dec.6, 2006) (referring to plaintiff's claim for breach of the implied covenant of good faith and fair dealing as a bad faith claim); *ABK, LLC v. Mid-Century Insur. Co.*, 454 P.3d 1175, 1186 (Idaho 2019) ("A plaintiff has an independent action in tort when this duty is breached which this Court recognizes as the tort of bad faith."); *White v. Unigard Mut. Ins. Co.*, 730 P.2d 1014, 1020 (Idaho 1986) ("The tort of bad faith breach of insurance contract then, has its foundations in the common law covenant of good faith and fair dealing….").

Accordingly, the Court will grant Defendant's motion for partial summary judgment to the extent it seeks clarification of Plaintiffs' claims and dismissal of their negligence claim. As recognized by the parties at the hearing, Plaintiffs have properly alleged a claim for breach of contract and a tort claim for insurance bad faith. There is no separate negligence claim, however.

### B.    The Bad Faith Claim

Turning to the merits, for a first-party insured to recover on a bad faith claim under Idaho law, the insured must show: 1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages. *Parks v. Safeco Ins. Co. of Illinois*, 376 P.3d 760, 766 (Idaho 2016). "Fundamental to the claim of bad faith is the idea that there must be coverage of the claim under the policy." *ABK, LLC*, 454 P.3d at 1186 (quoting *Robinson v. State Farm Mut. Auto. Ins. Co.*, 45 P.3d 829, 834 (Idaho 2002) (explaining plaintiff has

the burden of establishing coverage under a policy to prevail on a bad faith claim even if claim is paid)).

A denial or delay of payment will not be considered "unreasonable" if it was due to the insurer's "reasonable, fairly-debatable, honest, good-faith mistake in interpreting the insurance policy." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 331 (2010). "An insurer does not commit bad faith when it challenges the validity of a 'fairly debatable' claim, or when its delay results from honest mistakes." *Vaught v. Dairyland Ins. Co.*, 956 P.2d 674, 679 (1998) (quoting *White*, 730 P.2d at 1018)) The insured has the burden of showing that the claim was not fairly debatable. *Robinson*, 45 P.3d at 832

Here, Defendant contends summary judgment is warranted on the bad faith claim because Plaintiffs cannot prove that: 1) Allstate intentionally and unreasonably denied or withheld payment, and 2) the claim was fairly debatable. Defendant maintains that Plaintiffs failed to comply with terms of the policy requiring notice and documentation and, therefore, cannot show that any delay or denial of payment constituted bad faith. Plaintiffs disagree, arguing genuine issues of material fact are in dispute regarding whether Defendant intentionally and unreasonably delayed and denied payments and whether the policy claim was fairly debatable. (Dkt. 51.)

For the reasons that follow, Defendant's motion will be denied to the extent it seeks summary judgment on the bad faith claim. The Court again will address the arguments in the context of the items of coverage sought with Plaintiffs' claim of loss and included in the complaint.

### 1.    The Roof

Defendant contends that, because it paid for replacement of the entire roof and did so in a diligent and timely manner, there is no bad faith. (Dkts. 39, 55.) Plaintiffs disagree, arguing Defendant unreasonably delayed inspection, then denied coverage for the roof, and only later approved replacement of the roof when forced to do so by Plaintiffs. (Dkt. 51.)

Having carefully reviewed the record presented, the Court finds Plaintiffs have demonstrated that a triable issue of fact exists with regard to whether Defendant's actions or inactions constituted bad faith in its handling of the roof repairs. Most notably, Allstate's initial denial of coverage for the roof damage on March 25, 2017. (Dkt. 45-4.)

Following the report of damage by Plaintiffs on January 10, 2017, the first roof inspection Allstate conducted occurred on March 7, 2017, by a structural engineer.[12] The engineer's report dated March 15, 2017, concluded that the general wear and tear on the 20-year-old roof was not caused by the January 2017, weather event. (Dkt. 45-3.) Critically, however, the report posed the following recommendations and conclusions:

> In the areas where ice dams/snow drifts formed or leaks occurred, remove the roof shakes and confirm the condition of the sheathing, replace if significantly damaged or deteriorated.
>
> The roof sheathing may have been damaged in the areas near where dams and leaks formed, this damage, if present, would be 100% caused by the snow event.

---

[12] The Court recognizes that Allstate adjusters inspected the home prior to March 7, 2017, but they did not inspect the roof due to the conditions, and that Allstate received a roof inspection report from Plaintiffs' contractor in February 2017. The circumstances and timing of the prior inspections, however, further demonstrate there is a dispute concerning whether Allstate unreasonably delayed coverage of the roof.

Allstate's denial of coverage on March 25, 2017, immediately on the heels of its own engineer's report recommending further action be taken to confirm the condition of the roof sheathing and concluding that any damage to the sheathing "would be 100% caused by the snow event," is sufficient to demonstrate the existence of a genuine dispute regarding whether Defendant acted in bad faith. (Dkt. 45-3; Dkt. 45-4.) This is to say, that Plaintiffs have identified evidence upon which a jury could find that Defendant lacked a reasonable basis for initially denying and delaying the roof repairs and that coverage for the roof was not fairly debatable.

### 2. ALE, Pack-Out and Storage Costs, and Interior Repairs

For the same reasons argued in response to Plaintiffs' motion for summary judgment, Defendant maintains it paid the amounts due under the policy for ALE, pack-out and storage, and interior repairs, and, therefore, Plaintiffs cannot show that Allstate intentionally or unreasonably denied coverage or that coverage was not fairly debatable. (Dkt. 39.)

Defendant points out that Allstate paid ALE for eight months as agreed initially between the parties, paid the estimated costs for pack-out and storage, and paid for interior repairs shown to be covered under the policy. Defendant maintains there was a reasonable dispute over the additional amount of the costs for these items sought by Plaintiffs. Defendant reiterates that it requested supplemental documentation to substantiate the additional amounts claimed, but that Plaintiffs/AI failed to comply. (Dkt. 39-8 at 1; Dkt. 45-11 at 16-17; Dkt. 45-16.)

Conversely, Plaintiffs argue the record reflects genuine issues of fact exist as to whether Allstate's demands for documentation were unreasonable and simply a means to delay or deny payment in bad faith. (Dkt. 51 at 8-18.) Plaintiffs maintain they satisfied all of the terms of the policy and provided the documentation required under the policy to substantiate the damages they sought. Further, Plaintiffs contend Defendant engaged in intentional tactics to unreasonably delay and deny their claim by refusing to address the interior repairs until after the roof repairs were completed, changing adjusters multiple times, unnecessarily demanding revised estimates, and misrepresenting the discussions between the parties.

The arguments and evidence relied on by the parties are essentially the same as discussed in addressing Plaintiffs' motion for partial summary judgment. The Court will not repackage that discussion here to resolve Defendant's motion for summary judgment on the bad faith claim. As discussed previously, there are genuine issues of material fact in dispute regarding Allstate's handling of the policy claim with regard to ALE, pack-out and storage expenses, and interior repairs. These triable issues must be resolved by the finder of fact to determine whether Allstate intentionally and unreasonably denied or withheld payment, or if the claim was fairly debatable.

For example, the evidence is in dispute concerning whether Allstate reasonably requested substantiating documentation, or simply used that as a means to delay and deny paying the claim in full. Notably, Plaintiffs disagree that Defendant ever requested documentation to substantiate the third estimate for interior repairs submitted to Allstate in February 2018. Even assuming such a request was made, Plaintiffs have raised a

genuine dispute as to whether it was unreasonable for Allstate to have denied coverage for the interior repairs a mere ten days after adjuster Cole's comments on the estimate were provided to Plaintiffs/AI in April 2018 and before Plaintiffs/AI reasonably could have responded. (Dkt. 45-15; Dkt. 45-16; Dkt. 45-21.) Accordingly, Defendant's motion for partial summary judgment as to the bad faith claim will be denied.

### 3. Plaintiffs' Motion for Leave to Add a Claim for Punitive Damages

Plaintiffs seek leave to file an amended complaint to add a claim for punitive damages against Defendant. (Dkt. 40.) Defendant opposes the motion, pointing to its arguments in the summary judgment briefing that certain aspects of the policy claim were reasonably disputed. Further, Defendant argues Plaintiffs have not shown that Allstate's conduct and state of mind rose to the level required to sustain a claim for punitive damages. (Dkt. 50.)

A punitive damages claim is substantive in nature and accordingly controlled by Idaho law in diversity cases. *See Strong v. Unumprovident Corp.*, 393 F.Supp.2d. 1012, 1025 (D. Idaho 2005). Idaho Code Section 6-1604 provides that, after an appropriate pretrial motion and a hearing, the court must allow a party to amend the pleadings "if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." Idaho Code § 6-1604(2).

It is well established in Idaho that punitive damages are not favored and should be awarded only in the most unusual and compelling circumstances, and are to be awarded cautiously and within narrow limits. *Manning v. Twin Falls Clinic & Hosp., Inc.*, 830

P.2d 1185, 1190 (Idaho 1992) (citing *Jones v. Panhandle Distributors, Inc.*, 792 P.2d 315 (Idaho 1990)). The decision whether to submit the punitive damages question to a jury rests within the sound discretion of the trial court. *Id.*

"The determination of whether a party should be permitted to assert a claim for punitive damages is not based upon the type of case or claim [but instead]…revolves around whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC.*, 191 P.3d 196, 201 (Idaho 2008) (citing *Myers v. Workmen's Auto. Ins. Co.*, 95 P.3d 977, 985 (Idaho 2004)). At the pretrial motion stage, such as here, Plaintiffs must show a "reasonable likelihood" that Defendant "performed a bad act with a bad state of mind." *Hall v. Farmers All. Mut. Ins. Co.*, 179 P.3d 276, 282 (Idaho 2008).

As to the first factor, punitive damages are an appropriate remedy only if the plaintiff establishes that "the defendant 'acted in a manner that was an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences.'" *Seiniger Law Office, P.A. v. North Pacific Ins. Co.*, 178 P.3d 606, 615 (Idaho 2008) (quoting *Myers*, 95 P.3d at 985). As to the second factor, the mental state required to support an award of punitive damages is "'an extremely harmful state of mind, whether that be termed malice, oppression, fraud or gross negligence; malice, oppression, wantonness; or simply deliberate or willful.'" *Id*.

Here, to establish the requisite bad act, Plaintiffs rely in large part on the opinion of their retained insurance expert in arguing that Defendant's continuing and systematic

pattern of delay and denial of the policy claim was an extreme deviation of insurance industry standards, and was oppressive and outrageous in the context of adjusting an insurance claim. (Dkts. 41, 46, 57.) In particular, Plaintiffs point to Defendant's refusal to pay the full costs for storage, personal property damage, and mitigation; and that Defendant ignored the findings and recommendations in the engineer reports. (Dkts. 41, 46.) Unsurprisingly, Defendant's retained expert concludes to the contrary, opining that Allstate's actions were reasonable and consistent with industry standards, particularly when considering the policy provisions Defendant contends that Plaintiffs failed to satisfy. (Dkt. 39-2.)

Plaintiffs further argue the positions taken and comments made by Weekes and Cole when adjusting the claim were oppressive and establish a harmful state of mind. In particular, Plaintiffs point to Weekes' statement at a June 6, 2017 meeting that Plaintiffs could either accept Allstate's determination regarding payment on the policy claim or sue. (Dkt. 41 at 7.) Plaintiffs further contend that Allstate "knew" the consequences of its denial and that closing the claim would be "devastating" to Plaintiffs. (Dkt. 41.) In response, Defendant reiterates that it paid the amounts sought under the claim for which it received sufficient proof of loss, e.g., the roof, interior repairs, ALE, pack-out/storage, and mitigation. Defendant asserts the contested portions of the claim were reasonable disagreements and not the product of a harmful, malicious, or oppressive state of mind. (Dkt. 50.)

Having carefully reviewed the record, the Court finds Plaintiffs have failed to establish a reasonable likelihood of showing that Defendant's conduct constituted an

extreme deviation from reasonable standards of conduct and that Defendant acted with an

extremely harmful state of mind when it denied certain portions of the insurance claim

and disputed others. *Hall*, 179 P.3d at 282. Plaintiffs' contentions may be sufficient to

show Defendant's denial of certain costs sought under the policy were unreasonable or

even in bad faith, as discussed above. This, however, does not equate to establishing that

Defendant's handling of the claim constituted an extreme deviation from reasonable

standards of conduct or were committed with an extremely harmful state of mind.

Simply, Plaintiffs have not demonstrated that Allstate's conduct rises to the level required

to allow a claim for punitive damages to proceed. Accordingly, Plaintiffs' motion for

leave to amend to add a claim punitive damages will be denied.

## **ORDER**

NOW THEREFORE IT IS HEREBY ORDERED:

1) Plaintiffs' Motion for Partial Summary Judgment (Dkt. 42) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to Plaintiffs' claim for breach of contract for the payment of mitigation costs. The motion is denied as to the remainder of the breach of contract claim.

2) Defendant's Motion for Partial Summary Judgment (Dkt. 38) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to the negligence claim, which is dismissed with prejudice. The motion is denied as to the claim for breach of the implied covenant of good faith and fair dealing, which shall be construed as a claim for insurance bad faith.

3) Plaintiffs' Motion for Leave to File Amended Complaint (Dkt. 40) is

   **DENIED**.


IT IS FURTHER ORDERED that a telephonic status conference is scheduled for **May 26, 2021, at 10:00 a.m. (MT).** All parties shall use the Court's AT&T teleconferencing line to connect to this hearing, by dialing: 1-888-273-3658, Access Code: 5475731, Security Code: 5637. The parties are directed to confer in advance of the conference and be prepared to advise the Court as to how they intend to proceed in this matter.

DATED: May 11, 2021

Honorable Candy W. Dale
United States Magistrate Judge